# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v. | : | |
| SHAWN THOMAS | : | 08-558 |

## M E M O R A N D U M

Gene E.K. Pratter, J.                                                                                December 22, 2010

**Introduction**

Defendant Shawn Thomas calls upon the Court to reject the jury's finding that, among other offenses, he possessed a firearm in furtherance of drug trafficking in violation of 18 U.S.C. §924(c). Mr. Thomas does not challenge the jury's verdict that he did engage in drug trafficking. Moreover, at trial he did not, and he does not now, object to the jury instructions concerning the definition of "possession" or "in furtherance of." Rather, Mr. Thomas takes direct aim at the sufficiency of the evidence presented to the jury by the Government to sustain the §924(c) verdict.

Having closely read the parties' briefs, reviewed the trial transcript and re-read the transcript of the November 18, 2010 oral argument on this point, the Court concludes that it can not and should not disrupt the jury's reasonable conclusion that Mr. Thomas did indeed possess a firearm, to wit, the .38 caliber hand gun referred to by witnesses and found in his dwelling in proximity to drug paraphernalia, in furtherance of drug trafficking.

**Background**

Among other charges and in addition to the § 924(c) charge, Mr. Thomas was charged with three counts of distribution of "crack" cocaine to Philadelphia undercover Officer Richard

Gramlich between May 21 and June 17, 2008. In addition to Officer Gramlich's own testimony about his discussions with Mr. Thomas, the jury also heard the actual recorded conversations between the two of them. Specifically, Officer Gramlich told the jury that, having purchased "crack" cocaine from Mr. Thomas, he and Mr. Thomas also discussed the possible purchase of a firearm from Mr. Thomas. On another occasion, indeed in connection with Officer Gramlich's May 21, 2008 "crack" cocaine purchase from Mr. Thomas outside of Smegy's Bar, in response to Officer Gramlich's expression of some concern about an individual in the environs, the jury heard a recording of Mr. Thomas assuring Officer Gramlich that it was "cool" given that he [Mr. Thomas] had "a hammer in the car."[1] According to Officer Gramlich, and as confirmed by recordings of their conversations played for the jury, there were a number of occasions when the two men discussed drugs and guns. For example, on May 29, 2008 Mr. Thomas told Officer Gramlich that he had a ".38 snub nose" that he "rode with" and "needed", and that this was something that "you gotta have" when "you making money and a house." According to Officer Gramlich, this exchange meant that Mr. Thomas was saying he had a .38 caliber snub nose revolver that he as a drug dealer needed to have.

The jury also heard testimony from Mr. Thomas's girlfriend, Audrena McDaniels, and others who recounted that Mr. Thomas left from and/or returned to an apartment at 7506 Algon Avenue in Philadelphia, using the location as his departure or return point on his way to or from conducting "crack" cocaine sales, including the sales to Officer Gramlich. Law enforcement surveillance also documented Mr. Thomas's comings from and goings to that residential location.

The jury then heard from Officer Gramlich and other law enforcement personnel about the

---

[1] Officer Gramlich testified that he understood a "hammer" to be a gun.

2

execution of a search warrant at the 7506 Algon Avenue apartment on June 17, 2008, during which a Smith & Wesson .38 caliber snub nose revolver, drug paraphernalia and cocaine base were recovered. Specifically, the gun was found on top of a kitchen cabinet where Ms. McDaniels told the officers Mr. Thomas had put it a week earlier. A digital scale (commonly used in connection with "crack" packaging preparations for subsequent distribution) was recovered from the drawer below the place where the revolver was located. Two bundles of crack were seized from a child's bag in the bedroom closet in the apartment.

Supplementing the foregoing evidence on the point at issue in this Motion, the jury also heard from Ms. McDaniels that in May and June 2008 she and Mr. Thomas lived in the 7506 Algon Avenue apartment with their children; that Mr. Thomas sold illegal drugs during that time period; that she sometimes accompanied Mr. Thomas on drug deliveries; that she had known of the gun's location because Mr. Thomas had told her he put it there; that the gun was for protection in connection with Mr. Thomas's drug trade; and that Mr. Thomas had placed the drugs in the bag in the children's bedroom closet.

Finally, the jury also heard from a DEA Special Agent testifying as an expert in the area of drug trafficking. He testified, <u>inter alia</u>, that drug dealers use the term "hammer" when referencing a gun; that drug dealers frequently have guns to protect themselves and/or to defend their drug inventory; and that digital scales are used by drug dealers to weigh drug contraband.[2]

---

[2] Other drug paraphernalia was found in the apartment pursuant to the lawful search (e.g., a Pepsi can with a removable lid and tiny zip-lock baggies bundled together) but not in such proximity to the gun's location on top of the kitchen cabinet to make discussion of such other items especially useful for present purposes in analyzing the "in furtherance" issue. However, such other items do add to the efficacy of the jury's now undisputed conclusion that Mr. Thomas was engaged in drug trafficking.

The expert also opined that the quantities of "crack" cocaine found in the apartment reflected drug distribution activities rather than a quantity bespeaking personal use.

The jury found Mr. Thomas guilty on all eight counts of the superceding indictment. Mr. Thomas's timely Rule 29 motion followed thereafter for consideration by the Court.

**Discussion**

The Court can grant a Rule 29 motion for judgment of acquittal only if the Court finds that the evidence presented at trial is not sufficient to sustain the jury's verdict of conviction. Fed. R. Crim. P. 29(c); United States v. Gonzalez, 918 F.2d 1129, 1132 (3rd Cir. 1990). The Government must have presented "substantial evidence to support the jury's guilty verdict," United States v. Wexler, 838 F.2d 88, 90 (3rd Cir. 1988), but Mr. Thomas as the proponent of the Motion has a "substantial burden" to show that the verdict does not rest on legally sufficient evidence. A defendant's burden is a heavy one, given that the Court need only determine that, based on all of the evidence, and viewing that evidence in the light most favorable to the Government - - including drawing all reasonable inferences from that evidence in the prosecution's favor - - any rational fact finder could have found Mr. Thomas guilty beyond a reasonable doubt. United States v. Smith, 294 F.3d 473, 476-77 (3rd Cir. 2002); United States v. Coleman, 811 F.2d 804, 807-08 (3rd Cir. 1987).

In discharging the judicial function authorized by Rule 29, the Court must not usurp the jury's role of primacy in weighing the evidence, determining the witnesses' credibility and drawing allowable inferences. United States v. Brodie, 403 F.3d 123, 133 (3rd Cir. 2005). The Court must remain mindful that "the evidence does not need to be inconsistent with every conclusion save that of guilt." Gonzalez, 918 F.2d at 1132 (quoting Gov't of Virgin Islands v.

Williams, 739 F.2d 936, 940 (3rd Cir. 1984)). Indeed, the Court is constrained to reserve a Rule 29 finding in favor of a defendant to cases where the Government's failure to prove guilt by sufficient evidence is clear. Brodie, 403 F.3d at 133.

Based even only on the evidence recounted above, by "[e]xamin[ing] the 'totality of the evidence, both direct and circumstantial,'" and "credit[ing] 'all available inferences in favor of the [G]overnment,'" United States v. Sparrow, 371 F.3d 851, 852 (3rd Cir. 2004), the Court concludes that the Government presented sufficient evidence to support the jury's determination that Mr. Thomas possessed the .38 snub nose Smith & Wesson revolver during the operative time period, i.e., May 21, 2008 through June 17, 2008, and that he did so in furtherance of his drug trafficking activities. To reach that conclusion the jury could reasonably draw upon the testimony of Mr. Thomas's live-in girlfriend as well as that of the police officer expert witness and undercover Officer Gramlich and others and, significantly, Mr. Thomas's own words as memorialized in the recordings of his discussions with Officer Gramlich which the jury heard.

Thus, it was entirely reasonable for the jury to conclude that (1) Mr. Thomas lived at the 7506 Algon Avenue apartment and used that location as his home base from which he departed and to which he returned as he conducted drug transactions; (2) that he himself touted his possession of a "hammer" as "needed" in his activities, something his girlfriend Ms. McDaniels reiterated;[3] and (3) that Mr. Thomas placed his revolver, drugs and related paraphernalia in the apartment where he prepared the drug packages for subsequent transactions. This evidence is

---

[3]Although the jury *could* have dismissed Mr. Thomas's words as mere boastful bravado, it was *not required* to do so. Indeed, the inference that Mr. Thomas had a gun in his car when he was doing business with Officer Gramlich was entirely reasonable, especially given that his own voluntary description of his gun fit perfectly with the .38 snub nose revolver ultimately recovered.

indicative of decidedly more than "mere presence," meaningless happenstance or inexplicable coincidence, in terms of the proximity, access and usefulness of the gun in connection with Mr. Thomas's drugs and drug activities during the time period in question. The jury's conclusion is entitled to remain in tact inasmuch as there is no legal requirement that the gun be found, or visually documented, bound up as garnish on a neatly tied package of illegal drugs being held contemporaneously by the defendant at the moment of his arrest in order to sustain a jury's considered judgment. Here, both prosecution and defense engaged in spirited and skilled advocacy, before, during and after the trial. As a result, the jury received the benefits of well-honed evidentiary submissions, all tested by vigorous cross-examination but weighed against uncontroversial legal principles in the applicable jury instructions delivered by the Court. The jury's verdict withstands this post-trial Rule 29 assault, and the motion must be **DENIED.**

BY THE COURT:

　_/s/ Gene E.K. Pratter_　
Gene E.K. Pratter,　　J.